******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT ELECK
(SC 18876)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued October 29, 2013—officially released October 21, 2014*

*William B. Westcott*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Joseph C. Valdes*, senior assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Robert Eleck, appeals from the judgment of the Appellate Court, which affirmed the judgment of conviction of assault in the first degree by means of a dangerous instrument in violation of General Statutes § 53a-59 (a) (1) rendered by the trial court following a jury trial. See *State* v. *Eleck*, 130 Conn. App. 632, 633, 23 A.3d 818 (2011). The sole claim raised by the defendant in this appeal is that the Appellate Court improperly affirmed the judgment of the trial court on the ground that evidence of an online conversation proffered by the defendant to impeach one of the state's witnesses was not properly authenticated and was therefore inadmissible. Assuming, without deciding, that it was improper for the trial court to exclude the proffered evidence, there was no harm. Therefore, we affirm, on other grounds, the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "The defendant attended a party at 16 Charles Street in Norwalk in the early morning hours of December 9, 2007. All of the approximately twenty teens and young adults who attended were consuming alcoholic beverages, and many were intoxicated. While inside the house, the defendant was involved in at least two verbal confrontations with one guest, Matthew Peacock. The defendant also conversed on several occasions with another guest, Simone Judway. Shortly after 2:30 a.m., outside the house, the defendant and Peacock engaged in a physical altercation that included punching and grappling. Three other guests, including Zachary Finch, joined the fight to help Peacock. When the combatants were separated, both Peacock and Finch discovered that they had suffered stab wounds.

"The defendant subsequently was arrested and charged with assault in the first degree with a dangerous instrument in violation of § 53a-59 (a) (1) in connection with the injury to Peacock and assault in the second degree in violation of General Statutes § 53a-60 (a) (2) in connection with the injury to Finch. Following a trial to the jury, the defendant was convicted of assault in the first degree regarding the assault on Peacock and acquitted of assaulting Finch. Because the defendant's assault conviction involved the use of a dangerous instrument, he faced a mandatory minimum sentence of five years. He was, in fact, sentenced to the mandatory minimum sentence of five years incarceration with an additional ten years of special parole." Id., 633–34.

The defendant appealed from the trial court's judgment of conviction to the Appellate Court, claiming, inter alia, that the trial court improperly ruled that a printed copy of an online conversation between the defendant and a person utilizing Judway's Facebook

account,[1] which the defendant attempted to submit into evidence for the purpose of impeaching Judway's testimony, had not been properly authenticated.[2] Id., 634. The Appellate Court disagreed with the defendant and, accordingly, concluded that the trial court had not abused its discretion in declining to admit the document into evidence. Id., 644. This appeal followed.[3]

The opinion of the Appellate Court reveals additional facts and procedural history that are relevant to the defendant's claim. "As a witness for the state, Judway offered key testimony that, prior to the physical altercation, the defendant had told her that 'if anyone messes with me tonight, I am going to stab them.' Subsequently, during cross-examination, defense counsel sought to impeach Judway's credibility by asking her whether she had spoken with the defendant in person since the incident. She responded that she had seen the defendant in public but had not spoken to him in person, by telephone or by computer. Defense counsel then showed Judway a printout purporting to show an exchange of electronic messages between the defendant's Facebook account and another account under the user name 'Simone Danielle.' Judway identified the user name as her own, but denied sending the messages to the defendant. She also testified that someone had 'hacked' into her Facebook account and changed her password 'two [to] three weeks' ago such that she had been unable to access it subsequently.

"On the following day, during the defendant's testimony, his counsel offered into evidence the defendant's Facebook printout containing messages purportedly from Judway. The state objected on the grounds that the authorship of the messages could not be authenticated and [thus] the document was irrelevant. In response, to authenticate the document, the defendant testified that he downloaded and printed the exchange of messages directly from his own computer. He also advanced testimony that he recognized the user name, 'Simone Danielle,' as belonging to Judway because she had added him as a Facebook 'friend' a short time before he received the message. He testified that the 'Simone Danielle' profile contained photographs and other entries identifying Judway as the holder of that account. Finally, he testified that when he logged in to his Facebook account after the previous day's testimony, user 'Simone Danielle' had removed him from her list of Facebook 'friends.' The defendant's counsel then argued that based on this testimony and Judway's identification of her user name, there was a sufficient foundation to admit the document for the jury's consideration." (Footnotes omitted.) Id., 635–36.

As set forth by the Appellate Court in a footnote, the printout of the online conversation between the defendant and "Simone Danielle" proffered by the defendant consisted of the following:[4]

"Simone Danielle: Hey I saw you the other day and I just want to say nice bike.

"[The Defendant]: why would you wanna talk to me

"Simone Danielle: I'm just saying that you have a nice bike that's all. The past is the past.

"[The Defendant]: yup thanks

"Simone Danielle: No problems." (Internal quotation marks omitted.) Id., 635 n.2.

As noted by the Appellate Court, "[t]he [trial] court . . . sustained the state's objection on the ground that the defendant had not authenticated that the messages were written by Judway herself." Id., 636.

The defendant does not claim that the trial court's refusal to admit the proffered document infringed on any of his constitutional rights. Instead, the defendant claims that the ruling is evidentiary in nature.[5]

Regardless of the defendants claims, assuming, without deciding, that it was improper to exclude the proffered evidence, we now examine whether the exclusion was harmful. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Favoccia*, 306 Conn. 770, 808–809, 51 A.3d 1002 (2012). In the present case, we conclude that, assuming, without deciding, that the exclusion of the proffered evidence was improper, the ruling was harmless.

The defendant argues that the evidentiary error was improper because the online conversation impeached Judway. Specifically, the defendant claims that Judway denied having any contact with the defendant between the night of the assault and the day of trial and that this conversation impeached that testimony. The defendant's position is that the failure to impeach Judway likely affected the jury's verdict because Judway's testimony suggested that the defendant was prepared to

stab anyone who "messes with" him, which suggested premeditation on the part of the defendant. In addition, the defendant notes that both the state, during its closing argument, and Detective James O'Leary, of the Norwalk Police Department, the officer who interviewed the witnesses in this case, believed that Judway was the most reliable witness because she did not smell of alcohol and wrote out her own statement.

The state argues that any impropriety was harmless. The state claims that its case against the defendant was strong, as multiple witnesses identified the defendant as the person who initiated the physical altercation with Peacock, at least two witnesses saw the defendant wrap Peacock in a bear hug, another saw the defendant holding a knife at the end of the fight, and several witnesses observed that Peacock was bleeding soon after the confrontation with the defendant. The state also notes that the defendant admitted to using a knife during the fight. Further, the state claims, the substance of the conversation between Judway and the defendant did not touch on the details of the case or Judway's impending testimony and, thus, admission of the conversation would likely have little impact on the jury's determination on Judway's credibility. Finally, the state notes that the defendant presented testimony to the jury indicating that he had received messages from a Facebook account maintained by Judway and that, during closing arguments, the defendant used this testimony to attack Judway's credibility. It is the state's position that the introduction of the printout of the Facebook conversation between the defendant and Judway would, thus, have been very unlikely to have had a substantial impact on the jury's verdict.

We agree with the state. The defendant has not shown that the exclusion of the proffered evidence had a substantial impact on the jury's verdict. In addition, the state's case was strong. Numerous witnesses not only identified the defendant as the person who initiated the contact with Peacock, but also noticed after the contact that Peacock was bleeding. Further, the defendant admitted using a knife during the fight. Given that the defendant presented evidence in the form of his own testimony that he was contacted by Judway and argued during closing argument that her denial of authorship should be taken into account when judging Judway's credibility, it is doubtful that the admission of the printout would have had any additional impact. We conclude, therefore, that assuming, without deciding, that there was any evidentiary impropriety, the ruling was harmless.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] Facebook is "a free, web-based social networking site with over 153 million members in the United States. . . . To join Facebook, a user must provide his or her name, age, gender, and a valid e-mail address, and agree to Facebook's terms of service. . . . Once registered, a member receives

a [p]rofile page, may upload a profile photo representing him or herself, and may establish connections with other members by approving them as Facebook [f]riends." (Citations omitted; internal quotation marks omitted.) *Fraley* v. *Facebook*, *Inc.*, 830 F. Supp. 2d 785, 791 (N.D. Cal. 2011).

[2] The defendant also claimed that this state's statutory sentencing scheme, which mandated that the defendant receive a nonsuspendable sentence of five years, was unconstitutional. *State* v. *Eleck*, supra, 130 Conn. App. 644–45. The Appellate Court declined to review this claim after concluding that the issue was governed by its previous decision in *State* v. *Schultz*, 100 Conn. App. 709, 726–29, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007). *State* v. *Eleck*, supra, 645. This claim is not, however, at issue in the present appeal. See footnote 3 of this opinion.

[3] We granted the defendant's petition for certification to appeal limited to the following question: "Did the Appellate Court properly determine that the trial court did not abuse its discretion in concluding that Facebook messages purportedly sent by a witness were inadmissible because they lacked sufficient authentication?" State v. Eleck, 302 Conn. 945, 30 A.3d 2 (2011). The defendant did not petition this court to review the Appellate Court's decision not to review his constitutional claim. See footnote 2 of this opinion.

[4] The conversation is presented without modification and, thus, contains both grammatical and spelling errors.

[5] Whether the same rules that apply for the authentication of documents should also apply to electronic data, in view of our ruling, remains an open question. We note that Judge Bishop currently heads a committee regarding the Connecticut Code of Evidence. We would urge that committee to consider this issue.

———————————————