# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-00404-SCT

*TYRONE BOYD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/28/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| TRIAL COURT ATTORNEYS: | PHILLIP S. "FLIP" WEINBERG |
| | KATHRYN R. McNAIR |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: ERIN ELIZABETH PRIDGEN |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., PIERCE AND COLEMAN, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from the conviction of Tyrone Boyd under Mississippi Code

Section 97-5-33(6) for the exploitation of a child. Following conviction, the Circuit Court

of Lauderdale County sentenced Boyd to a term of twelve years imprisonment with seven

years to serve, and five years to be suspended and on reporting probation.  Boyd appeals to

this Court, claiming the trial court abused its discretion by admitting Facebook and text

messages into evidence and that the State failed to properly authenticate them.  Specifically,

Boyd argues the evidence purporting to link him to the messages in question was not sufficient to prove that he, in fact, authored the messages. Boyd's contention is meritless, but more importantly, Boyd is barred from appealing on such grounds, as he failed to object to the items' admission at trial. We affirm Boyd's conviction and sentence.

## STATEMENT OF THE FACTS

¶2. On June 13, 2012, RDS[1] was living in Meehan, in Lauderdale County, Mississippi. At that time, RDS was twelve years old. Through Facebook, RDS received a friend request from someone named "Tyrone Boyd."[2] RDS did not yet know Boyd, a thirty-two-year-old man, but the two shared a mutual friend, so she accepted his friend request. Boyd began sending Facebook messages to RDS, and RDS sent messages back to Boyd. The messages began innocuously. Boyd asked general questions of RDS, such as where she lived, who her siblings were and how old her siblings were. RDS asked Boyd his age. Boyd said that he was seventeen. RDS told Boyd that he was too old for her. At that point, RDS informed her stepfather about her conversations with Boyd. The stepfather said that the name "Tyrone Boyd" sounded familiar and he told RDS that he may have attended high school with Boyd. RDS subsequently gave her cell phone to her stepfather, and he began to send text messages to Boyd on RDS's cell phone, posing as RDS.

---

[1]Because this case involves the sexual exploitation of a minor, we refer to the victim by initials only.

[2]The Facebook profile that initiated the cyber-friendship with RDS listed only the name "Tyrone Boyd" and did not supply an accompanying picture.

¶3.     RDS testified that her stepfather and Boyd communicated using the Facebook phone application to send messages to one another. At one point in their conversations, Boyd asked if RDS was a virgin. At that time, Boyd was talking to the stepfather posing as RDS. When Boyd asked RDS her age, the stepfather replied that she was fourteen.[3] Afterward, the stepfather, still posing as RDS, gave her phone number to Boyd, as the two wanted to communicate by text message, as well as through the Facebook application.

¶4.     On June 26, 2012, Boyd text-messaged RDS's phone to say that he wanted to pick up RDS at her house. RDS said that she would rather walk down the street than have Boyd come to her house. The stepfather, posing as RDS said, "You know I'm a virgin." Boyd responded, "What that mean." Boyd then continued, "So, I'm – I'm going to be the first?" Boyd then wrote "You ready to lose – you ready to lose it?" Then he, as RDS, answered "Yeah." He next messaged Boyd that he wanted to meet him at the Spaceway store. The stepfather and his wife, RDS's mother, then drove to Spaceway. They testified Boyd drove into the Spaceway parking area, and the stepfather recognized his former high school classmate, Tyrone Boyd.

¶5.     The stepfather and his wife went to the sheriff's department the next day. They spoke with police investigator Gypsi Ward. The stepfather gave Ward RDS's cell phone. Ward continued communicating with Boyd, pretending to be RDS. The second meeting was effectuated by text messages sent by Ward, now posing as RDS, to Boyd, in addition to

[3]The stepfather testified that, while posing as RDS, he mistakenly said she was fourteen, even though she was twelve. The stepfather attributed his mistake to the fact that he has seven children, one of whom was fourteen at the time the conversation took place.

telephone conversations between Boyd and one of RDS's older sisters, who also posed as RDS. Boyd appeared the second night, and deputies arrested him near the highway behind Spaceway. The deputies seized a cell phone when they arrested Boyd. After arresting Boyd, Ward confiscated his phone and obtained a search warrant to discover its contents. The phone had no contents whatsoever, other than a contact list of various phone numbers, including RDS's.[4]

¶6.     Boyd was charged with exploitation of a child under Mississippi Code Section 97-5-33(6), which provides: "No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-36 (6) (Rev. 2014). On February 11, 2013, the Grand Jury of Lauderdale County indicted Boyd with exploitation of a child ". . . by means of a computer and/or cell phone, [to] knowingly entice induce, persuade, seduce, solicit, advise, coerce and /or order a child, to-wit: [RDS], to meet with him for the purpose of engaging in sexually explicit conduct."

¶7.     On January 27, 2014, the matter went to trial. The State presented a case that RDS had identified herself as a minor, but that Boyd still had attempted to meet with her alone and had expressed interest in having sex with her. The stepfather testified that he, along with his wife, saw Boyd at the place and time at which Boyd and RDS had decided to meet.

_____

[4]RDS's Facebook profile did not list her full name. Rather, her profile name was her first and middle name. The contact name in the phone's contact list appeared to refer to RDS's first and middle names.

Investigator Ward identified Boyd the second time before arresting him with her partner at the agreed-upon meeting spot. Ward testified that Boyd was driving alone and no other people were present. Boyd denied ownership of the phone and the Facebook account.

¶8. At trial, the state submitted printouts of the Facebook messages between the Tyrone Boyd account and RDS's account. The State also admitted text-message printouts, taken from RDS's phone, of messages sent between RDS's number and Boyd's number. The State further submitted a printout of Boyd's phone's contact list. Counsel for Boyd did not object to any of these evidentiary admissions. At trial, a data-extraction technician explained how he processed Boyd's phone through a data extractor and identified a printout of Boyd's stored numbers in the contacts list in the phone. One of the contacts contained RDS's phone number. The phone contained no text messages, and the technician suggested that this lack of data was consistent with purposeful deletion of the phone's contents.

¶9. On January 31, 2014, the jury returned a guilty verdict. The Circuit Court of Lauderdale County, Mississippi, Honorable Lester Williamson presiding, sentenced Boyd to a term of twelve years with seven years to serve and five years to be suspended and on reporting probation. Boyd also was fined $6,930.50. On March 28, 2014, Boyd moved for a new trial. The trial court entered an order denying Boyd's motion. Boyd then filed a timely notice of appeal with this Court.

¶10. On appeal, Boyd argues the court erred when it admitted the printouts containing the Facebook and text messages. Boyd claims that the evidence of the Facebook messages and text messages received by RDS was not sufficiently authenticated by the State. Specifically,

Boyd contends the State should have attempted to "identify if Boyd was the actual owner of the Facebook account that corresponded with [RDS's] account," or "subpoena Boyd's cell phone company records to show who owned his phone, what numbers the phone dialed and the location of the person using the phone."

¶11.   Boyd appeals, seeking reversal of his conviction and a new trial.  The single issue raised by Boyd on appeal is:

> **Whether the trial court abused its discretion by admitting Facebook and text messages into evidence that the State failed to properly authenticate**.

¶12.   This Court reviews the admission of evidence under an abuse-of-discretion standard. *Young v. Guild*, 7 So. 3d 251, 262 (Miss. 2009).  This Court will not reverse a conviction unless the trial court abused its discretion in a manner that was prejudicial to the accused or adversely affected a substantial right of the accused. *Sewell v. State*, 721 So. 2d 129, 138 (Miss. 1999).

## ANALYSIS

¶13.   This Court repeatedly has held that failure to make a contemporaneous objection waives an issue for purposes of appeal. *Williams v. State*, 684 So. 2d 1179, 1203 (Miss. 1996).  Because Boyd did not object to the admission into evidence of the Facebook messages, the text messages, and the cell-phone printouts, Boyd is procedurally barred from raising the items' admission as an issue on appeal.  Notwithstanding the procedural bar, we find Boyd's assignments of error meritless.

¶14.   Mississippi Rule of Evidence Rule 901(a) provides for the authentication of evidence as a condition precedent to admission.  Authentication simply establishes that "a matter is

6

what its proponent claims it to be." M.R.E. 901.   Authentication and identification of evidence are central to the concept of relevance; unless an item of evidence is shown to be "genuine," the item is irrelevant and should be excluded. *See* M.R.E. 901(a) cmt.

¶15.    In a case of first impression, this Court recently examined the unique issues presented in attempting to authenticate messages sent via social media. ***Smith v. State***, 136 So. 3d 424 (Miss. 2014).  In ***Smith***, this Court noted that "concerns over authentication arise 'because anyone can create a fictitious account and masquerade under another person's name or can gain access to another's account by obtaining the user's username and password," and consequently, "the potential for fabricating or tampering with electronically stored information on a social networking site is high, and poses challenges to authenticating printouts from the website." ***Id***. at 432 (internal citations omitted).  Further, this Court held "[b]ecause of the special concerns regarding fabrication, 'the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communication.'" ***Id***. at 433 (internal citations omitted).

¶16.    ***Smith*** then outlines situations where this type of evidence is sufficiently authenticated:

> . . . the sender admits authorship, the purported sender is seen composing the communication, business records of an internet service provider or cell phone company show that the communication originated from the purported sender's personal computer or cell phone under circumstances in which it is reasonable to believe that only the purported sender would have access to the computer or cell phone, the communication contains information that only the purported sender could be expected to know, the purported sender responds to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication, or other circumstances peculiar to the particular case may suffice to establish a prima facie showing of authenticity.

7

*Smith*, 136 So. 3d at 433 (¶21). While not exhaustive, *Smith* provides examples of circumstances in which evidence could be deemed authentic in congruence with Mississippi Rule of Evidence 901.[5] We find that, other than the first two situations outlined in *Smith* (where the sender admits authorship or a witness testifies to seeing the author compose and transmit the message), each of the other situations exemplified in *Smith* entail circumstantial, and not direct, evidence of authenticity.

**Facebook messages**

¶17. On appeal Boyd contends, "[t]he Facebook messages did not contain any personal identifying information" and that "[w]ith nothing more to properly authenticate" the trial

[5] Mississippi Rule of Evidence 901, in pertinent part, provides:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.

(2) Non-expert Opinion on Handwriting. Non-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.
. . .
(10) Other Methods. Any method of authentication or identification provided by the Mississippi Supreme Court or by the Constitution of Mississippi.

court should have excluded the Facebook messages from evidence.[6]  At trial, the State introduced Facebook messages from RDS's account by which she communicated with the Tyrone Boyd account.  Over the course of the Facebook communications, the Boyd profile asked RDS for her number, which she gave him.  In reference to his own number Boyd told RDS, "I just got dis new # so soon as it charge I will give it 2u all I no is 481 ma." Not only was RDS's number later recovered from the contacts list in the phone found on Boyd during his arrest, but the text messages the State attributed to Boyd came from a number beginning with the numerical sequence "601-481."

¶18.    Presumably, thousands of cell-phone owners living near Meridian, Mississippi, have phone numbers beginning with the same six digits.  However, Boyd was arrested at the time and meeting place arranged in text messages originating from a number containing these six digits, with a phone containing RDS's phone number in his possession, and the messages also happened to be from Tyrone Boyd.  Whether these peculiar circumstances are analogous to those contemplated in *Smith* is a question for this Court.  We find the Facebook messages were properly admitted considering the circumstances laid out here.[7]

---

[6]Note that Facebook accounts cannot be verified as can phone calls and text messages, as mentioned in *Smith*. *See Smith*, 136 So. 3d at 434-435.

[7]Admittedly, this analysis involves a new application of the well-settled authentication process (in light of technological change).  We find that, in *Smith*, the Court addressed two cases *State v. Eleck*, 23 A. 3d 818, 823 (Conn. App. 2011) and *United States v. Jackson*, 208 F. 3d 633, 636-37 (7th Cir. 2000)), and that those two cases stood for the principle that "Because of the special concerns regarding fabrication, 'the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient standing alone to authenticate that person as the author of the communications.'" *Smith*, 136 So. 3d at 433.  In both *Eleck* and *Jackson*, the proponent attempted to authenticate Facebook messages using only photos, posts, and the

**Text messages**

¶19.    Boyd asserts, "the State simply relied on a UFED machine printout" that listed RDS's phone number as one of the contacts" on the phone confiscated from Boyd.  This assertion is incorrect.  The State also submitted a printout made from RDS's phone of text messages between RDS and the number attributed to Boyd.  Second, the State pointed to the fact that Boyd arrived at or just behind the Spaceway store twice immediately after messages were sent between his phone and RDS's phone agreeing to meet there, and Boyd's presence was confirmed by three eyewitnesses who testified at trial.  Third, the jury heard how police confiscated a phone when Boyd was arrested that had the same number with which RDS had communicated.  Lastly, the confiscated phone's contacts list contained RDS's phone number, despite the fact that Boyd claimed not to know her.

¶20.    Contrary to Boyd's assertion on appeal, *Smith* does not stand for the proposition that the State must authenticate electronic communications by subpoenaing the telephone company and obtaining global positioning information for each message sent to prove that a person authored the messages in question.  In relevant part from the above-cited excerpt, *Smith* held that messages also may be authenticated by evidence that " . . . the purported sender respond[ed] to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication," or that "other circumstances peculiar to the particular case may suffice to establish a prima facie showing of authenticity." *Smith*, 136

account names from the profiles.  In this case, it is clear that the name "Tyrone Boyd" on the Facebook profile does not suffice to show that Tyrone Boyd authored the messages; what does authenticate them are the "peculiar circumstances" of the instant case.

So. 3d at 433. Here, Boyd appeared at the Spaceway store after the person using the number attributed to him agreed to do so. This fact would stand as a "circumstantial indication" that the purported sender, Boyd, authored the messages because he went to the agreed location twice immediately after messages agreeing to meet at that location were sent.

¶21. Next, *Smith* provides that other "peculiar circumstances" may establish authenticity. *Id*. While this Court has not defined these circumstances in great depth, we find the State's evidence was sufficiently authenticated under *Smith*. The fact that police arrested Boyd with a phone that had the exact same number as the one with which RDS corresponded, and that Boyd was alone at the time of seizure, certainly seems to be a peculiar coincidence indicating that this was Boyd's phone. Moreover, the fact that the phone contained RDS's number is even more circumstantially suggestive. Boyd's only explanation for any of the above was his testimony that the police both conspired to frame him with a cell phone that was not his and that Investigator Ward perjured herself at trial in furtherance of the conspiracy. The jury, it seems, did not subscribe to Boyd's version of events.

¶22. As Boyd would have it, the State could only admit evidence of his Facebook phone-application communications and his text-message communications, for that matter, by obtaining records, including locational GPS information on *each* message, to the *exclusion* of all other people who may have accessed his phone or phone applications, in order to prove each message independently authentic. Such a standard seems impracticable and goes much further than this Court provided for in *Smith*. Boyd would make the authentication of electronic communication appear to be *sui generis* in relation to more familiar media. But,

11

where authorship is not admitted or witnessed, authentication always has depended on circumstantial evidence, whether the subject medium was electronic or not. Here, we find the instant facts provide sufficient authentication, particularly in light of the "peculiar circumstances" of this case. Thus, we find Boyd's claims regarding each contested admission are without merit.

## CONCLUSION

¶23. Boyd's issue raised on appeal is procedurally barred, and this Court cannot review it. Notwithstanding the bar, Boyd's contentions are meritless. Accordingly, we affirm Boyd's conviction and sentence.

¶24. **CONVICTION OF EXPLOITATION OF A CHILD AND SENTENCE OF TWELVE (12) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, AND SEVEN (7) YEARS TO SERVE, AND FIVE (5) YEARS PROBATION, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY PROBATION SUPERVISION FEE IN THE AMOUNT OF $55 PER MONTH. WITHIN THIRTY (30) DAYS OF RELEASE, THE APPELLANT SHALL PAY A FINE OF $50,000 WITH $45,000 SUSPENDED, A $1,000 FINE TO THE CHILDREN'S TRUST FUND, COURT COSTS OF $420.50, $10 TO THE VBF, AND AN APPEARANCE BOND OF $500. APPELLANT SHALL RECEIVE SIXTY-FOUR (64) DAYS JAIL CREDIT.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**