# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01396-COA

ANTHONY RAY ABRAM A/K/A ANTHONY          APPELLANT
ABRAM

v.

STATE OF MISSISSIPPI                                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/26/2016 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT G. WHITACRE JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 10/16/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., BARNES AND GREENLEE, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1.     Anthony Ray Abram appeals his convictions of being an accessory after the fact to first-degree murder and first-degree arson. We find Abram's assignments of error are procedurally barred and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     On September 1, 2014, Ryan Cooper's burned body was found in the back of his smoldering Ford Ranger on East Reservoir Road in Marion County. Following an autopsy, a medical examiner determined that Cooper died from a gunshot wound to the head. A deputy-state fire marshal who examined Cooper's truck determined that the fire that had

severely damaged Cooper's vehicle was not started accidentally and was due to human involvement.

¶3.     Jerry Page was subsequently indicted on the charges of first-degree murder, first-degree arson, and simple assault on a law enforcement officer.  Abram, Page's brother, was indicted on the charges of being an accessory after the fact to first-degree murder, and first-degree arson.

¶4.     At trial, the State relied on the testimony of three witnesses: Alex Garner (Garner), Alex Abram (Alex), and David Holmes.[1]

¶5.     Garner was the only witness that directly observed the shooting.  Garner testified that at the time of the shooting, he was living in his mother's van parked near James Kelly's house on Expose Road.  On the night of August 31, 2014, Cooper picked up Garner, and they drove up the road to Alex's house.  When they arrived, Cooper jumped out of his truck and "got into a confrontation" with Abram, Page, Alex, and Holmes.  Cooper then drove away without Garner.  Garner began to walk down the road back toward Kelly's house, but Cooper picked him up and returned to Alex's house.  From his truck, Cooper screamed, "[Y]'all must [not] know me. I'm a LK," and "Y'all don't scare me[.]" Garner testified that people began shooting at Cooper's truck, but he could not see whom they were because he had his head down.

¶6.     Garner further testified that he and Cooper drove to Kelly's house, parked in the

---

[1] Holmes and Page are Alex's cousins.

2

driveway, and got out of the truck. Shortly thereafter, Abram, Page, Alex, and Holmes drove up in a truck, parked nearby, and jumped out holding guns. Garner testified that Abram ran up to Cooper and put a gun to Cooper's head but then lowered the gun. Then, Page approached Cooper and shot him in the middle of his forehead at point-blank range. Cooper fell to the ground. Garner saw Alex and Holmes start walking away. Abram picked up Cooper's body from the driveway and put it in the back of Cooper's truck. Garner testified that Page threatened to kill him and his mother if Garner told anyone about the shooting. Abram then drove off in Cooper's truck, with Page following in his own truck.

¶7. According to Garner, about forty-five minutes later, Page returned and again threatened Garner not to tell anyone about the shooting. Garner said that he feared for his life, so he helped Page cover up the shooting by giving Page gasoline to burn Cooper's blood off Kelly's driveway. Garner said he also shoveled dirt over Cooper's blood.

¶8. Garner testified that he was charged with being an accessory after the fact to murder and hindering the prosecution. He agreed to plead guilty to both charges and to testify at trial in exchange for a twenty-year sentence, with sixteen years suspended, and four years to serve.

¶9. Alex's and Holmes's testimonies slightly differed from Garner's testimony. Both Alex and Holmes testified that on the night of the shooting, they attended a barbeque that Alex hosted at his trailer on Expose Road. When guests began to leave the barbeque, Alex and Holmes walked down the street to Kelly's house.

3

¶10. Alex testified that as he and Holmes approached Kelly's house, he saw four men standing in the yard: Cooper, Garner, Abram, and Page. Page's full-size white truck and a smaller white truck were parked in the driveway. Cooper appeared to be arguing with Page, who held a handgun. Alex said he and Holmes began to run back to his trailer when they heard a gun cock. As they ran, a gunshot rang out. Alex then saw the two white trucks pass by, but he could not identify the drivers. The State was allowed to refresh Alex's memory by playing an audio recording of a pretrial statement he gave to law enforcement. The jurors listened to the recording and were each provided a transcript of the recorded statement; however, neither the recording nor the transcript were admitted into evidence, and the transcripts were collected from the jurors immediately after the audio recording was played. Alex subsequently testified that he remembered who was driving the white trucks—Page was driving his own full-size truck, and Abram was driving Cooper's smaller truck. Later that night, as Alex was cleaning up his yard, Page and Abram stopped by in Page's truck. Alex never again saw Cooper's truck.

¶11. Holmes's testimony was mostly consistent with Alex's. But Holmes testified that he did not see Abram talking with Cooper, Page, and Garner in Kelly's yard, and he could not see which of the men held a gun. Holmes explained that Cooper's small white truck was parked in front Page's full-size truck in Kelly's driveway. Holmes did not testify about seeing the trucks pass by after hearing a gunshot. Holmes said that after he returned to Alex's trailer, he met up with his girlfriend, and they went home.

¶12. Hilda Patton was the only witness to testify for Abram. She said that Abram was her friend and lived at her house in August 2014. Patton testified that on the day of the shooting, Abram was at her residence from 8:00 a.m. until she went to bed between 11 p.m. and 1 a.m. Patton said Abram went to bed before her and cooked breakfast the next morning. Patton testified that she disclosed this information to Abram's attorney about two weeks before trial. She acknowledged that she had not told anyone else about this information during the two years that Abram had been in jail pending trial.

¶13. Following a joint trial, Page and Abram were convicted as charged. Abram was sentenced to concurrent terms of twenty years in the custody of the Mississippi Department of Corrections for being an accessory after the fact to first-degree murder and three years for first-degree arson. Abram filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, which the trial court denied. Abram now appeals and argues: (1) the trial court erroneously allowed the State to play Alex's entire recorded statement to the jury and provided each juror with a transcript of the statement, and (2) the trial court failed to properly instruct the jury.

ANALYSIS

*I.    Alex's Recorded Pretrial Statement*

¶14. On September 10, 2014, Alex voluntarily gave a recorded statement to law enforcement regarding the night of the shooting. In his statement, Alex explained that as he ran back to his trailer, he saw the two white trucks that had been parked at Kelly's house pass

5

by, one after the other. According to Alex, Abram passed by first in Cooper's truck, and Page followed in his full-size truck. But on direct examination at trial, Alex testified he "didn't get a chance to see who was driving." The State sought to refresh Alex's memory with his prior-recorded statement, and the trial court ruled that part of the audio recording could be played for the limited purpose of refreshing Alex's memory. The defense objected claiming that the State was "cherry picking" the case and "working real hard to elicit testimony favorable to themselves with great effort." The trial court responded that should Abram wish to play the entirety of the recording for the jury, he could do so in his case-in-chief.

¶15. The State then showed Alex a transcript page of his prior-recorded statement. Alex responded that he "didn't know [he] wrote a statement" and that he was not familiar with the transcribed version of his recorded statement. The trial court ruled that because Alex did not recognize the transcript, the entirety of Alex's recorded statement would be played. The trial court allowed the State to provide each juror with a transcript of the recording to compare with the audio recording as it played. Page's counsel objected to the transcripts, arguing that the audio recording was the best evidence. The trial court ruled that the transcripts would be taken from the jurors after the recording was played, and the jury would not be permitted to take the transcripts into the jury room.

¶16. After the audio recording was played for the jury, the transcripts were collected. The State then moved to admit the audio recording into evidence. Page's counsel objected to the

6

recording as past evidence of Alex's testimony. The trial court held that the recording would be marked for identification purposes only, stating that neither the recording nor the transcript would be admitted into evidence or allowed in the jury room.

¶17. After the audio recording of Alex's pretrial statement was played, the State asked Alex whether he remembered making the statement. Alex responded that he did. Further, Alex testified that the statement he gave to law enforcement was the truth. Alex said he remembered that when the two trucks passed by, Abram was driving the small white truck, and Page was driving his larger truck.

¶18. On appeal, Abram argues the trial court erred in allowing the State to play Alex's entire recorded statement and in providing each juror with a transcript.[2] We find this issue is procedurally barred.

¶19. The record shows Abram's counsel failed to contemporaneously object to the admission of the audio recording in evidence (i.e., playing of the audio recording in the presence of the jury). Abram's counsel argued, not that it was error to allow the jury to listen to the audio recording, but that the entire audio recording should be played for the jury, not just certain portions, as the State suggested. "[F]ailure to make a contemporaneous objection waives an issue for purposes of appeal." *Boyd v. State*, 175 So. 3d 1, 4 (¶13) (Miss. 2015).

---

[2] In *Page v. State*, 2016-KA-01464-COA, 2018 WL 3030923, at *5-*6 (¶¶23-28) (Miss. Ct. App. June 19, 2018), we addressed this issue appealed by Abram's co-defendant, Page. We held that Page waived any objection to the playing of the recorded interview and that it was not an abuse of discretion to allow the jurors to have transcripts. This reasoning applies here.

Because Abram failed to object, this issue is procedurally barred from consideration on appeal.

¶20.    Although this issue is procedurally barred, we find further discussion regarding Mississippi Rule of Evidence 612 is necessary.  A trial will take place long after the event giving rise to the cause of action that occurred.  4 Jeffrey Jackson, Mary Miller, & Donald Campbell, Encyclopedia of Mississippi Law, *Evidence* § 33:59 (2d ed. 2016).  As a result, a witness may need assistance in refreshing his recollection.  *Id*.  Pursuant to Rule 612, counsel may refresh a witness's memory by providing the witness information to use.  *Id*.  Rule 612(a)(1) allows a witness to "use[] a writing, recording, or object to refresh [his] memory . . . while testifying."  M.R.E. 612(a)(1).  "The only requirement before an item is used to refresh a witness's memory is that the witness have no present memory of the event."  Encyclopedia of Mississippi Law, *Evidence* at § 33:59 (citing *Ervin v. State*, 136 So. 3d 1053, 1059 (Miss. 2014)).  In *Ervin*, the supreme court specifically ruled:

> Mississippi Rule of Evidence 612 allows a witness to use documents to refresh his memory while testifying.  [M.R.E.] 612.  A document used to refresh a witness's recollection need not be admissible under the Mississippi Rules of Evidence.  *Hunt v. State*, 687 So. 2d 1154, 1162 (Miss.1996).  "The only requirement is that the witness have no present memory of the event."  *Id.* When defense counsel asked Stevenson "Do you have a recollection of that?" he responded "No."  Thus, the State's argument that the defense could not use these documents to refresh Stevenson's memory on cross-examination because they were not admissible is without merit.

*Ervin*, 136 So. 3d at 1059 (¶17).

¶21.    On direct examination, Alex was asked if he saw who was driving the trucks and

answered that he "didn't get a chance to see who was driving." Alex did not testify that he could not remember who was driving. His testimony may not be construed to conclude that he had "no present memory of the event." Alex simply stated that he "didn't get a chance to see who was driving." Nevertheless, the State asked Alex to review the transcript of his prior statement; Alex did and said he could not recognize it. The State then asked that Alex be allowed to hear the audio recording of the prior statement. The trial court allowed the jury to hear the entire audio recording and to see the transcript of Alex's prior statement. The trial court did not "admit" either into evidence.[3]

¶22. Under Rule 612, when a document or recording is offered to a witness to refresh the witness's recollection, the party that offers the document or recording to refresh the witness's recollection (i.e., the producing party) is not allowed to produce the document to the jury or to play the audio recording to the jury. In other words, under Rule 612, the producing party may not publish the document or recording to the jury by reading the document, providing the jury with a transcript, or letting the jury listen to the recording. Instead, under Rule 612(b), "[a]n adverse party is entitled to have the writing [or] recording . . . produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Thus, Rule 612 gives only "an adverse party" or the nonproducing party the right to ask that the writing or recording be published to the

---

[3] Normally, a writing or recording must be admitted into evidence under the Mississippi Rules of Evidence before the jury is allowed to see the writing or hear the recording.

jury.

¶23.    As further guidance, *Williams on Mississippi Evidence* sets forth the appropriate steps

for refreshing a witness's memory under Rule 612:

> (1) Examining counsel must demonstrate to the satisfaction of the court that
> the witness cannot remember a certain fact.  Then, with the court's permission,
> counsel may approach the witness and show him some item that will trigger
> his recollection of the forgotten facts.  *That item may be a writing* such as
> notes, letters, a diary, a book or a hospital record, or it may be an object such
> as a photograph, a piece of jewelry or a weapon, *or it may be a recording* of
> a voice, a speech or an unusual sound that will be *played to the witness*.  The
> nature of the item is immaterial; the critical issue is whether it triggers the
> witness's recollection of the facts so that he now may relate them to the jury.
>
> (2) When the witness, after reading, handling, smelling or hearing the item,
> affirms that he now remembers the facts, he must return the item to counsel
> and testify solely from his refreshed memory.  This refreshed memory, not the
> document, object or recording, is now the source of his testimony.
>
> (3) At this time, opposing counsel has an absolute right to inspect the item, to
> use it in cross-examining the witness and to introduce all or relevant portions
> of it into evidence.  It is important to remember that *only the opponent can
> offer the item into evidence*.

Parham Williams, Williams on Mississippi Evidence, *Witnesses* § 6.22[1] (2016) (emphasis

added).

¶24.    At this point in the trial, the State did not have the right to assert Rule 612 as authority

to give Alex either a copy of the transcript of his prior statement or have him listen to the

audio recording of that statement.  There was nothing about Alex's testimony that could or

needed to be "refreshed" under Rule 612.  There was certainly no basis under Rule 612 to

allow the producing party to publish the transcript and recording to the jury.

¶25. It is clear that the State wanted to use the transcript or recording of the prior statement to impeach Alex's testimony that he "didn't get a chance to see who was driving [the trucks]." In his prior statement, Alex said that he saw Abram pass by first in Cooper's truck, and Page followed in his full-size truck. The State wanted to show the jury that Alex's courtroom testimony was in conflict and inconsistent with a statement Alex had previously made outside the courtroom. The State wanted to use Alex's prior statement to impeach his trial testimony. There is a way to do that under the Mississippi Rules of Evidence, but it is not Rule 612.

¶26. The Mississippi Rules of Evidence restrict how parties may use prior inconsistent statements. Mississippi Rule of Evidence 613 imposes a procedural requirement on this process. Rule 613, titled "Witness's Prior Statement," provides:

> (a) Showing or Disclosing the Statement During Examination. When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.

> (b) Extrinsic Evidence of a Prior Inconsistent Statement. Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subdivision (b) does not apply to an opposing party's statement under Rule 801(d)(2).

¶27. To impeach a witness, under Rule 613, the lawyer may choose to use a prior statement to show the jury an inconsistency in the witness's testimony. The producing party may not simply introduce the statement into evidence (i.e., publish it to the jury). If the State (as the

producing party) wants to introduce the transcript or the audio recording in evidence, it is considered to be extrinsic evidence, and the State must comply with Rule 613(b). Here, neither the transcript nor the audio recording were offered under Rule 613(b).

¶28. As previously noted, Abram did not object to the submission of the entire audio recording to the jury. Instead, in response to the State's request to play only a portion of the audio recording, Abram objected and asked that the entire recording be played. Because Abram failed to object, he is procedurally barred from now claiming that the trial court erred in allowing the State to play Alex's entire recorded statement.

¶29. Notwithstanding the procedural bar, we find no plain error in the submission of the audio recording. "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. State*, 155 So. 3d 733, 738-39 (¶8) (Miss. 2014). Although the correct procedure was not followed to refresh a witness's recollection under Rule 612, we cannot say that such error resulted in a manifest miscarriage of justice or seriously affected the fairness, integrity, or public reputation of the judicial proceeding because Abram's counsel requested that Alex's entire statement be played to the jury. Accordingly, we affirm.

    *II.    Jury Instruction*

¶30. During trial, Abram proffered Jury Instruction 6 which read:

> You have heard evidence that witnesses for the Prosecution made statements prior to trial that may be inconsistent with [] their testimony at this trial. If you

12

believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness' testimony. You may not, however, consider the prior statement as evidence of the truth of the matters contained in that prior statement.

The trial judge announced that the instruction would be given. But the instruction itself was stamped "refused." On appeal, Abram contends the trial judge erred by mistakenly stamping the instruction as refused and not giving the instruction to the jury.

¶31.   After reviewing the record, we are unable to determine whether or not Jury Instruction 6 was read to the jury. Yet, even assuming the instruction was not given, we find no error. Abram did not alert the trial court that it failed to read his instruction. "We cannot hold a trial court in error on a matter not presented to it for a decision." *Ronk v. State*, 172 So. 3d 1112, 1139 (¶68) (Miss. 2015). This issue is without merit.

## CONCLUSION

¶32.   For the above reasons, we affirm the circuit court's judgment.

¶33.   **AFFIRMED.**

**BARNES, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., CARLTON AND WESTBROOKS, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

13