WALLER, CHIEF JUSTICE,
FOR THE COURT;
¶ 1; A Rankin County jury found Douglas Walters guilty of grand larceny, and he was sentenced to serve ten years in the custody of the Mississippi Department of Corrections. Walters now appeals to this Court, arguing that the trial court erred in its application of the grand-larceny statute, in quashing a codefendant’s subpoena, and in admitting unauthenticated hearsay into evidence. Finding no error, we affirm.
FACTS & PROCEDURAL HISTORY
¶ 2. On the morning of February 9, 2012, Robert Nelson drove to his construction company’s 140-acre property located off Highway 471 in Brandon, Mississippi. Nelson’s company specializes in-building roads and bridges, and he uses this property to store construction equipment and materials. Upon arriving at the property, Nelson noticed that the chain securing the front gate had been cut, and a padlock had been attached to the chain in place of the combination lock that normally held it in place. Nelson drove onto the property to investigate. Near the back of the property, Nelson observed a man carrying one of his company’s concrete hoppers with a forklift.[1] Nelson did not recognize the man, So he called the police.
¶ 3. Bradley Turner with the Brandon Police Department responded to Nelson’s property at around 8:00 a.m. Turner identified the man on Nelson’s property as Arnold Bailey, and he determined that the forklift had been rented from McGraw Rental & Supply in Ridgeland by Douglas Watters. Later that, afternoon, Turner met Watters at Nelson’s property so that Walters could retrieve the forklift and return it to McGraw Rental. Turner did not make any arrests at that time.
¶4. Nelson reported to Turner that about 150 pieces Of heavy-duty steel scaffolding, along with some other materials, were missing from his property.- In an effort to locate the missing scaffolding, Turner visited some local recycling mills. Turner located two scale-ticket receipts indicating that Watters had delivered scrap metal to General Recycling in Flowood on February 8 and 9, 2012. Turner obtained a photograph of the February 9 delivery, which depicted Watters’s truck pulling a trailer full of metal scaffolding.
¶ 5. On May 2, 2013, Watters and Bailey were indicted for one count of grand larceny, in violation of Section 97-17-41 of the Mississippi Code, The indictment alleged that, on or about February- 9, 2012, Walters and Bailey unlawfully took, stole, and carried away steel scaffolding belonging to Nelson and having a value of $500 or more, with the intent to permanently deprive *527 Nelson of this property.[2] Walters and Bailey were tried separately.
¶ 6. Shortly after Walters’s first trial commenced, the State discovered photographic evidence with possible exculpatory value to Walters. Accordingly, the trial court declared a mistrial and allowed Walters to review this evidence. Walters’s second trial also ended in a mistrial, as the jury was unable to reach a verdict after lengthy deliberations. Walters’s third and final trial commenced on June 9, 2015.
¶7. At trial, Nelson testified that the type of scaffolding he uses in his business is not common because it typically is used in heavy construction projects. He estimated that each piece of scaffolding was worth about $65. During Nelson’s testimony, the State introduced into evidence a piece of scaffolding owned by Nelson. Nelson testified that this scaffolding looked identical to the scaffolding in the photograph retrieved from General Recycling. On cross-examination, Nelson admitted that his scaffolding did not have any unique identifying marks and that about fifteen people knew the combination to the lock on the front gate of his property,
¶8. Steve Lambright testified that he worked as the scale master for General Recycling, and that he was working the scales on February 9, 2012, when Walters delivered a load of steel scaffolding. Lam-bright knew Walters as a regular customer of General Recycling. He also explained that General Recycling tracks its customers’ transactional information electronically and stores photographs of every transaction. The scale ticket for the February 9 delivery indicated that Walters had delivered 6,880 pounds of metal at 8:27 a.m. and was paid $722.40. The scale ticket and photographs of this transaction were admitted into evidence.
¶ 9. Walters’s defense at trial was that he owned the materials that he sold to General Recycling on February 9, 2012. He claimed that these materials had been used to build a house on his property in Brandon, but that he had decided to sell the materials after the house burned down. The State called Bo Edgington with the Brandon Police Department to challenge this defense. Edgington had responded to a house fire at Walters’s property on October 10, 2010. Edgington had taken numerous photographs of the property as the fire department raked through the debris. Edgington’s photographs were admitted into evidence. Edgington testified that he observed some metal scaffolding in the debris on Walters’s property; however, this scaffolding did not look similar to the scaffolding depicted in the photographs retrieved from General Recycling.
¶ 10. Russell Humphreys testified as an expert witness for the State. He was accepted by the trial court as an expert in the area of “price and identification of scaffolding.” Humphreys worked as the manager of Direct Scaffold Services in Pearl, Mississippi, a company that sells and rents scaffolding to contractors. Hum-phreys had worked for Direct Scaffold Services for fifteen years at the- time of trial and had an additional four years of experience with another company. Hum- *528 phreys identified the type of scaffolding depicted in the photographs taken at General Recycling as a “shoring frame,”'which is used primarily for holding up heavy objects. He testified that he would sell used shoring irames for between $80 and $90 per piece, and he would rent them for $10 per piece, per month. He identified the scaffolding depicted in Edginton’s photographs as a “step frame,” which is a type of masonry scaffolding.
¶ 11. Walters testified at trial and called several witnesses in his defense. The bulk of the defense witnesses’ testimony dealt with the construction of Walters’s house around 2010 and the subsequent clearing of his property after the house burned down. Walters admitted to renting a forklift from McGraw Rental on February 7, 2012, and selling a load of scrap metal to General Recycling on February 9, 2012. However, Walters claimed that he owned the scaffolding depicted in the photographs retrieved from General Recycling. Walters stated that he regularly purchased “cars, tractors, motors, pipe,” and sold them to scrap yards and recycling mills when the prices were high. When prices were low, he would store these items on his property, where he also lives. He testified that he also owned a large quantity of scaffolding because he previously had attempted to build a house on his property. Walters admitted into evidence a receipt indicating that he had purchased 350 pieces of scaffolding from a man named Sam Young in 2006. Several witnesses testified to visiting Walters’s property while he was building his home and seeing scaffolding surrounding the home. The witnesses also confirmed that Walters’s house had burned down in 2010.
¶ 12. Several witnesses testified that, on February 8, 2012, Walters and some friends and family members met at his property to clear the debris from the house fire to make room for a new mobile home. Walters testified that he rented a forklift from McGraw Rental to help him clear the property. Walters loaded scrap metal, which included scaffolding that was burned in the house fire, onto a trailer to take to the recycling mill. According to Walters, at the end of the day, Bailey asked to borrow the forklift. Walters obliged, and Bailey drove the forklift off the property. Walters claimed that he did not know why Bailey wanted to borrow the forklift. Walters also stated that the only time he had ever visited Nelson’s property was to pick up the forklift, from Turner on the evening of February 9, 2012.
¶ 13. At the conclusion of trial, the jury returned a verdict finding Walters guilty of grand larceny. The trial court sentenced him to serve ten years in the custody of the Mississippi Department of Corrections. Walters now appeals to this Court, raising the following issues:
I. Whether the trial court erred in its application of the grand-larceny statute.
II. Whether the trial court erred in quashing the subpoena of Arnold Bailey.
III. Whether the trial court erred in admitting Google Earth images of Walters’s property into evidence.
IY. Whether Walters’s trial counsel rendered constitutionally ineffective assistance.
V. Whether the trial court’s rulings were the result of bias or prejudice.[3]
*529 DISCUSSION
I. Whether the trial court erred in its application of the grand-larceny statute.
¶ 14. Walters was’charged with committing grand larceny in violation of Section 97-17-41 of the Mississippi Code. On the day of the. offense, Section 97-17-41 provided:
Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years.
Miss. Code Ann. § 97-17-41 (2013) (emphasis added). In July 2014, after Walters’s indictment but before his conviction, the Legislature amended Section 97-17-41 to provide, in pertinent part:
(1) Any person who shall be convicted of taking and carrying away, felo-niously, the personal property of another, of the value of One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00), shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding five (5) years; or shall be fined not more than Ten Thousand Dollars ($10,000.00), or both. The ■ total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.
(2) Any person who shall be convicted of taking and carrying away, felo-niously, the personal property of another, of the value of Five Thousand Dollars ($5,000.00) or more, but less than Twenty-five Thousand Dollars ($25,000.00), shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years; or shall be fined not more than Ten Thousand Dollars ($10,000.00), or both. The total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.
(3)Any person who shall be convicted of taking and carrying away, felo-niously, the personal property of another, of the value of Twenty-five Thousand Dollars- ($25,000.00) or more, shall be guilty of grand larceny, and shall be imprisoned in the Penitentiary for a term not exceeding twenty (20) years; or shall be fined not more than Ten Thousand Dollars ($10,000.00), or both. The total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.
Miss. Code Ann. § 97-17-41 (Supp. 2016) (emphasis added). At Walters’s third and final trial, which occurred in 2015, the trial court instructed the jury, based on the pre-amendment version of the statute, that it could convict Walters of grand larceny if it found that the stolen scaffolding had a value of $500 or more. Walters did not object to this instruction. After the jury reached its verdict, the trial court sentenced Walters to serve ten years in the custody of the Mississippi Department of Corrections, again based on the pre-amendment version of the statute. Walters did not object to the sentence imposed by the trial court.
¶ 15. On appeal, Walters presents a twofold argument that the trial court should have applied the post-amendment version *530 of Section 97-17-41 at trial. First, he argues that the trial court erred in instructing the jury that the minimum-value element of grand larceny was $500, rather than $1,000. Next, he argues that the trial court erred in failing to sentence him under the version of Section 97-17-41 that existed at the time of his conviction.
¶ 16. Walters did not present the above arguments to the trial court. Thus, he is procedurally barred from raising them for the first time on appeal. “We will not hold a trial court ‘in error on appeal for a matter not presented to it for decision.’ ” Moffett v. State, 49 So.3d 1073, 1101 (Miss. 2010) (quoting Mills v. Nichols, 467 So.2d 924, 931 (Miss. 1985)). This Court can review Walters’s claims only for plain error. “The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice.” Williams v. State, 794 So.2d 181, 187 (Miss. 2001) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss. 1989)), overruled on other grounds by Brown v. State, 995 So.2d 698, 703 (Miss. 2008). “To determine if plain error has occurred, we must determine ‘if the trial court has deviated from a legal rule, whether the error is plain, clear or obvious, and whether the error has prejudiced the outcome.of the trial.’ ” McGee v. State, 953 So.2d 211, 215 (Miss. 2007) (quoting Cox v. State, 793 So.2d 591, 597 (Miss. 2001)). As explained below, we find that the trial court’s application of the pre-amendment version of Section 97-17-41 was not erroneous.
A. Whether the trial court erred in instructing the jury on the elements of grand larceny.
¶ 17. Walters argues that the trial court should have instructed the jury that it was required to find that the value of the stolen property was “$1,000 or more,” in accordance with the amended version of Section 97-17-41, in order to find him guilty of grand larceny. This argument is without merit. The valué of the property stolen is an essential element of grand larceny that the State must prove beyond a reasonable doubt. See Henley v. State, 729 So.2d 232, 238 (Miss. 1998) (“Without evidence as to the value of the [stolen property], the State has failed to meet its burden of proof as to one of the elements of grand, larceny and conviction of same cannot be upheld.”). “The authority to define crimes and provide the punishment therefor is vested exclusively in the Legislature.” State v. Russell, 358 So.2d 409, 411 (Miss. 1978) (citing Howell v. State, 300 So.2d 774 (Miss. 1974)). And the Legislature has given strict instruction that the definition of a crime is controlled by the relevant criminal statute in place at the time the crime was committed. Section 99-19-1 of the Mississippi Code provides:
No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under, them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.
Miss. Code Ann. § 99-19-1 (Rev. 2015). The amendment to Section 97-17-41 does not specifically provide that the Legislature intended it to apply retroactively to crimes that occurred before its effective date. Thus, the plain language of Section 99-19-1 required the trial court to instruct the jury on the elements of grand larceny *531 as they existed at the time the crime was committed. This Court has reached the same conclusion in addressing amendments to the value element of felony shoplifting found in Section 97-23-93. See Moore v. State, 187 So.3d 109, 113-14 (Miss. 2016); Wilson v. State, 967 So.2d 32, 41-42 (Miss. 2007). Walters’s argument that he should receive the benefit of a jury instruction listing the elements of grand larceny as they existed at the time of trial, rather than at the time the crime was committed, is without merit.
B. Whether the trial court erred in sentencing Walters.
¶ 18. As previously stated, Section 99-19-1 establishes that the punishment for a crime is controlled by the version of the relevant criminal statute in place at the time the crime was committed, “notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.” Miss. Code Ann. § 99-19-1 (Rev. 2015) (emphasis added). Thus, under Section 99-19-1, the trial court is bound by a subsequent sentencing amendment only when the amending act specifically provides for application to the case in question. See, e.g., West v. State, 725 So.2d 872, 879 (Miss. 1998), overruled on other grounds by Wilson v. State, 194 So.3d 855 (Miss. 2016) (holding that 1994 amendment to capital-murder statutes applied to defendant’s trial for 1992 capital murder, where amendment specifically provided that it would apply to crimes committed before its effective date).
¶ 19. Walters claims, however, that Section 99-19-33 of the Mississippi Code requires the trial court to apply ameliorative amendments to sentencing statutes. That statute provides:
If any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment. Such error shall only entitle the party injured to vacate or reverse the judgment as to the punishment, and the legal punishment shah then be imposed by another sentence based on the original conviction or plea of guilty.
Miss. Code Ann. § 99-19-38 (Rev. 2015) (emphasis added). Walters argues that the trial court violated Section 99-19-33 by failing to sentence him under the amended grand-larceny statute.
¶ 20. Walters is correct that this Court previously has held that a trial court was required to apply ameliorative sentencing amendments enacted before the defendant’s conviction, finding that the term “may” in Section 99-19-33 was “intended to invoke ‘shall.’ ” West v. State, 725 So.2d 872, 879 (Miss. 1998). However, this Court recently overruled that proposition, finding that the West Court had misinterpreted Sections 99-19-1 and 99-19-33. Wilson, 194 So.3d at 872. Moreover, this Court has held that Section 99-19-33 applies only in cases in which the Legislature creates a new, separate crime with a lesser penalty that criminalizes the same behavior for which the defendant is being tried. Id. at 872 n.3. Walters’s case does not fit that description, so Section 99-19-33 does not apply, and the trial court was bound by Section 99-19-1 to sentence him under the version of the grand-larceny statute that was in place at the time the crime was committed.[4] This argument is without merit.
*532 II. Whether the trial court erred in quashing the subpoena of Arnold Bailey.
¶ 21. Walters and Bailey were indicted together for grand larceny, but they were tried separately, with the State electing to try Walters first. On January 26, 2015, the day before Walters’s second trial began, Bailey was served with a subpoena requiring him to appear and testify at the trial. In response, Bailey filed a motion to quash his subpoena, asserting that “[i]f the trial subpoena served upon him to give testimony in the trial of Douglas Walters is not quashed, Arnold Bailey will obviously exercise his rights to plead the ‘Fifth Amendment’ against possible self-incrimination.” On the first day of Walters’s second trial, prior to jury selection, the trial court held a hearing on the motion to quash. At the hearing, Bailey’s attorney represented that, because Bailey was a named codefen-dant in Walters’s indictment and had not yet been tried, he had advised Bailey to invoke his Fifth-Amendment privilege in response to any questions. Walters argued that he had a constitutional right to call witnesses in his defense, and that Bailey would have to exercise his own constitutional rights on the witness stand. However, Walters did not proffer any questions that he intended to ask Bailey. The trial court rejected Walters’s argument, finding that it would not benefit the jury, and would likely prejudice Bailey, to require him to take the stand only to refuse to answer any questions.
¶22. After the State had rested at the second trial, Walters asked the Court to revisit the issue of Bailey’s testimony, arguing that the development of the State’s evidence had made Bailey’s testimony necessary. Specifically, Investigator Turner had testified that Walters did not ask for directions to Nelson’s property when he came to pick up the forklift on the day of the crime. Walters contended that this testimony created an inference that he knew where Nelson’s property was located, when in fact, Bailey had driven him there. Walters argued that Bailey was the only witness who could testify to this fact and provide context to Investigator Turner’s testimony. The trial court rejected this argument, finding that it would be self-incriminating to Bailey to require him to testify that he knew where Nelson’s property was located. Accordingly, the trial court maintained its prior ruling on the motion to quash.
¶ 23. As previously discussed, Walters’s second trial ended in a mistrial. Walters did not subpoena Bailey to testify at his third trial. During the third trial, the State did not question Investigator Turner about whether Walters had needed directions to Nelson’s property. Now, on appeal from his conviction at his third trial, Walters argues that the trial court erred in quashing Bailey’s subpoena at his second trial.
¶ 24. The trial court’s decision to exclude testimony based on a witness’s invocation of the Fifth-Amendment privilege against self-incrimination is reviewed for an abuse of discretion. U.S. v. Boyett, 923 F.2d 378, 379 (5th Cir. 1991). While it is true that a criminal defendant has a constitutional right to have compulsory process for obtaining witnesses in his favor, that right “must give way to the witness’ Fifth Amendment privilege not to give testimony that would tend to incriminate him.” U.S. v. Khan, 728 F.2d 676, 678 (5th Cir. 1984). “Calling a witness who will refuse to testify does not fulfill the purpose [of the Sixth Amendment right to compulsory process].” U.S. v. Roberts, 503 F.2d 598, 600 (9th Cir. 1974) (internal cita *533 tion omitted). Thus, the Fifth Circuit has held that a trial court has the discretion, to allow a witness to offer a “blanket” assertion of the Fifth-Amendment privilege without appearing before the jury:
If it appears that a witness intends to claim the privilege as to essentially all questions, the court may, in its discretion, refuse to allow him to take the stand. Neither side has the right to benefit from any inferences the jury may draw simply from the witness’ assertion of.the privilege either alone or in conjunction with questions that have been put to him.
U.S. v. Lacouture, 495 F.2d 1237, 1240 (5th Cir. 1974) (citations omitted). This Court has held that a “blanket” invocation of a witness’s Fifth-Amendment privilege is appropriate in a criminal proceeding where the record reflects that:
(I) the witnesses are potential accessories to the same crime; (2) the witnesses upon the advice of their lawyers, would have invoked their Fifth Amendment privilege to each and every specific question, and (3) the trial judge has sufficient information to determine, in fact, that answering any questions at all about the offense would tend to incriminate the witnesses.
Edmonds v. State, 955 So.2d at 793 (citing Woodham v. State, 800 So.2d 1148, 1154-55 (Miss. 2001)).
¶ 25. In this case, the trial court did not abuse its discretion in accepting Bailey’s invocation of his Fifth-Amendment privilege and quashing his subpoena. Walters and Bailey were charged as code-fendants in the same indictment, and at the time Bailey received the subpoena, he still was awaiting trial. On the advice of counsel, Bailey invoked his privilege as to all questions Walters would ■ have asked him. At the hearing on the motion to quash prior to Walters’s second trail, Walters did not proffer any specific questions he intended to ask Bailey. And, based on the evidence in the record, the trial court reasonably concluded that any relevant-questions Walters sought to ask Bailey would tend to incriminate him. See U.S. v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980) (holding that, when a witness invokes the Fifth-Amendment privilege, the trial court may exclude the witness from testifying upon finding that he or she “could legitimately refuse to answer essentially all relevant questions.”). Accordingly, Walters did not have the right to place Bailey on the witness stand for the sole purpose of having him “plead the Fifth.” See Lacou-ture, 495 F.2d at 1240.
¶ 26. Moreover, Bailey’s absence at the second trial had no arguable effect on the jury’s verdict in Walters’s third trial. Walters’s only stated purpose for calling Bailey as a witness was to refute Investigator Turner’s testimony that Walters did not ask for directions to Nelson’s property, which created an alleged inference that he knew where the property was located. This argument was offered only at Walters’s second trial, which ended in a mistrial. Walters did not subpoena Bailey to testify at his third trial, and the State did not ask Investigator Turner during the third trial about whether Walters needed directions to locate Nelson’s property. Instead, during Walters’s cross-examination of Investigator Turner at the third trial, he raised the issue of whether Bailey had driven Walters to Nelson’s property to retrieve the forklift.[5] After consulting his report, Investigator Turner confirmed that Bailey *534 was with Walters when he came to Nelson’s property to pick up the forklift. Thus, the alleged inference of guilt which Walters claims necessitated Bailey’s testimony never arose at the third trial. This argument is without merit.
III. Whether the trial court erred in admitting Google Earth images of Walters’s property into evidence.
¶ 27. At trial, Walters testified that his house had burned down in 2010, and that he was clearing debris and construction materials,' including scaffolding, ■ from his property in February 2012 to make room for a new mobile home. Thus, he claimed that he sold his own scaffolding, not Nelson’s, to General Recycling on February 9, 2012. On cross-examination, Walters denied that he had cleared his' property or placed a new mobile home there prior to February 2012.
¶ 28. The State presented two rebuttal witnesses to challenge Walters’s version of events. First, the State called Keith Chandler, a building inspector and code enforcement officer for the City of Brandon. Chandler visited Walters’s property on August 11, 2011, to determine whether the debris from the 2010 house fire had been removed. Chandler testified that the area where the house once stood had been cleared and cleaned up. The State admitted into evidence several photographs Chandler took during his visit to Walters’s property, none of which showed any scaffolding on the property. Based on Chandler’s testimony, the State argued that Walters could not have cleared his property and sold his own scaffolding to General Recycling on February 9,2012, because his property already had been cleared some time prior to August 2011.
¶ 29. The State also called Lance Cooper as a rebuttal witness. Cooper is the Geographic Information System Director for Rankin County. He testified that he regularly uses several satellite imaging programs, including Google Earth, to verify the locations of properties within the county for tax assessment and mapping purposes. During Cooper’s testimony and over Walters’s objections, the State admitted three satellite photographs from Google Earth’s “Historical Imagery” feature[6] depicting Walters’s property on May 2, 2010, November 4, 2011, and December 20, 2012. The first photograph depicts Walters’s home as it existed before it burned down in October 2010. However, the second photograph depicts a different house on Walters’s property in November 2011, four months before Walters allegedly cleared his property. The third photograph appears to show the same house as the second photograph, with some apparent additions.
¶ 30. Walters objected to the admission of these images at trial, claiming that they could not be authenticated properly by Cooper. Walters argued that Cooper had no knowledge of how the images were taken and had never been to the property in question. Walters also argued that the images were inadmissible hearsay. The trial court overruled Walters’s objections and allowed the admission of these images into evidence. On appeal, Walters reasserts his original objections to the images, claiming that they constitute inadmissible héarsay and were not authenticated properly. When reviewing the evi-dentiary rulings of a trial court, this Court *535 employs an abuse of discretion standard. Brown v. State, 965 So.2d 1023, 1026 (Miss. 2007) (citations omitted). In addition, “[w]hether the evidence presented satisfies Rule[] 901 of the Mississippi Rules of Evidence is a matter left to the discretion of the trial judge .... His decision will be upheld unless it can be shown that he abused his discretion.” Ragin v. State, 724 So.2d 901, 903 (Miss. 1998) (citations omitted).
¶ 31. We find Walters’s hearsay argument to be without merit. The trial court found that the images were admissible under the residual hearsay exception found in Mississippi Rule of Evidence 804(b)(5). But this finding was unnecessary, as the images themselves were not hearsay.[7] Hearsay is defined as “a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.” Miss. R. Evid. 801(c) (emphasis added). “Declarant” is defined as “the person who made the statement.” Miss. R. Evid. 801(b) (emphasis added). And a statement is defined as “a person’s oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.” Miss. R. Evid. 801(a) (emphasis added). Simply put, a photograph does not meet the definition of a “statement,” so it cannot qualify as hearsay under our rules of evidence. See U.S. v. Lizarraga-Tirado, 789 F.3d 1107, 1109 (9th Cir. 2015) (“[A] photograph merely depicts a scene as it existed at a particular time -Because a satellite image, like a photograph, makes no assertion, it isn’t hearsay.”). The trial court did not abuse its discretion in overruling Walters’s hearsay objection.
¶ 32. Likewise, Walters’s argument as to the authenticity of the photographs is without merit. “To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.” Miss. R. Evid. 901(a). “A party need only make a prima facie showing of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court.” Sewell v. State, 721 So.2d 129, 140 (Miss. 1998) (quoting U.S. v. McGlory, 968 F.2d 309, 328-29 (3d Cr. 1992)). The State made this prima facie showing through Cooper’s testimony that the photographs accurately depicted Walters’s property on the dates stated therein. Walters did not offer any evidence contradicting Cooper’s testimony prior to the admission of the photographs. Accordingly, we find that the trial court did not abuse its discretion in finding that the photographs had been properly authenticated.
Issues asserted in Walters’s pro se supplemental brief:
IY. Whether Walters received ineffective assistance of counsel
V. Whether the trial court erred in allowing personal bias to influence Walters’s trial and sentencing.
¶ 33. In his pro se supplemental brief, Walters raises two interrelated arguments based on. the belief that he could not be convicted of grand larceny because Section 97-17-41 was amended prior to his *536 conviction. First, he argues that he received ineffective assistance of counsel when his trial attorney failed to raise the amendment of Section 97-17-41 at trial, thereby allowing him to be tried as a felony defendant under facts that constituted a misdemeanor under the amended statute. Second, he argues that the trial court displayed bias and prejudice by imposing a felony sentence for what, according to Walters, was a misdemeanor offense. However, as previously discussed, Walters’s prosecution and punishment for grand larceny were controlled by the version of Section 97-17-41 that existed at the time the crime was committed. Accordingly, Walters’s arguments clearly are without merit and do not warrant further discussion.
CONCLUSION
¶ 34. For the foregoing reasons, we affirm Walters’s conviction and sentence.
¶ 35. CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY COURT COSTS, FEES AND ASSESSMENTS IN THE AMOUNT OF $731.50 WITHIN SIX (6) Months after release from CUSTODY. APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED IN PRETRIAL DETAINMENT.
RANDOLPH, P.J., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KITCHENS, J. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.; DICKINSON, P.J., JOINS IN PART. LAMAR, J., NOT PARTICIPATING.

. Some witnesses referred to the forklift as a skid-steer loader.

. The original indictment charged Walters and Bailey with stealing some additional property, including steel beams, aluminum plates, a shop fan, steel tubes, a concrete hopper, and fifty-gallon steel drums. The original indictment also included the specific number of items stolen. Prior to trial, the State moved to amend the indictment to remove the additional items, as well as the total number of items stolen, so that Walters and Bailey.were charged with stealing just the steel scaffolding. The indictment later was amended to change the date of the offense from Februaiy 8, 2012, to February 9, 2012. Walters does not challenge the amendment of his indictment on appeal.

. Issues I, II, and III are raised by Walters's appellate counsel. Issues IV and V are raised by Walters in a pro se supplemental brief.

. Justice Kitchens’s argument to the contrary is a reassertion of the arguments presented in *532 his dissent in Wilson.

. Investigator Turner's quoted statement in Justice Kitchens’s dissenting opinion was given in response to a question posed by Walters on cross-examination at the third trial, not by the State.

. The Historical Imagery feature became available on Google Earth in February 2009. John Hanske, "Dive into the new Google Earth.” Google Official Blog (February 2, 2009), https://googleblog.blogspot.com/2009/ 02/dive-into-new-google-earth.html. (Last visited Nov. 29, 2016).

. Justice Kitchens takes issue with the labels and date stamps contained within the satellite images, arguing that they also constitute hearsay. Walters did not raise those issues before the trial court or on appeal. Accordingly, those matters are procedurally barred. “The well-recognized rule is that the trial court will not be put in error on appeal for a matter not presented to it for decision.” Mills v. Nichols, 467 So.2d 924, 931 (Miss. 1985).