# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00319-COA

DAVID WARE A/K/A DAVID WAYNE WARE        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

DATE OF JUDGMENT:    01/23/2018
TRIAL JUDGE:    HON. JOHN ANDREW GREGORY
COURT FROM WHICH APPEALED:    CHICKASAW COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:    OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:    OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:    BENJAMIN F. CREEKMORE
NATURE OF THE CASE:    CRIMINAL - FELONY
DISPOSITION:    AFFIRMED - 04/23/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.

## BARNES, C.J., FOR THE COURT:

¶1. David Ware was indicted for the sale of a controlled substance under Mississippi Code Annotated section 41-29-139(a) (Rev. 2009) in the Chickasaw County Circuit Court. After a one-day trial, he was convicted and sentenced to thirty years, with ten years suspended, in the custody of the Mississippi Department of Corrections (MDOC). Ware appeals, claiming the trial court erred in failing to apply the ameliorative amendments of section 41-29-139(b)(1)(A) for his sentencing, which became effective in July 2014, prior to his trial. Under the amended statute, Ware would have been sentenced only to eight years.

Ware also argues the trial court erred in denying a cautionary jury instruction regarding the testimony of confidential informants. Finding no error, we affirm.

## FACTS

¶2. In May 2013, Chief Deputy Keith Roberson of the Chickasaw County Sheriff's Office conducted an undercover drug buy in Okolona, Mississippi, with confidential informant Allen Hunter. Prior to meeting with Roberson, Hunter called Ware to buy some crack cocaine. During the "pre-buy" meeting with Roberson, Hunter was thoroughly searched, and a video camera was hidden in his vehicle to capture the sale. Roberson gave Hunter $60 to purchase the drugs.

¶3. At Ware's trial, the videotape of the transaction was entered into evidence and played for the jury. Ware called Hunter to come over because "Boss," the drug dealer, was ready for them. Hunter picked Ware up at his apartment. Ware got into the vehicle while on the phone with Boss. Hunter drove to the Townhouse Apartments and gave Ware the $60. Ware told Hunter to circle the block. Ware went into the apartments. During this time, Hunter was speaking to Roberson on an open-line cell phone in his vehicle. Hunter returned to the apartments as Ware was walking out. Ware got in the vehicle and attempted to hand Hunter the crack cocaine. Hunter told Ware to hold it down in an attempt to get the drugs on camera. Ware then handed Hunter three unbagged rocks of crack cocaine. Hunter drove Ware back to his apartment and returned to the post-buy location.

¶4. During the post-buy meeting, Hunter gave Roberson the drugs and recording equipment. Roberson searched Hunter again and paid him $100 for the work. Hunter

2

testified that he did not know Boss's name and that Boss would not sell drugs to him because Boss did not trust him. Roberson sealed the drugs in an evidence bag and sent the bag to the Tupelo Crime Lab. A forensic analyst tested the drugs and determined the three substances consisted of 0.49 grams of crack cocaine.

## ANALYSIS

### I. Sentencing

¶5. Ware argues that the trial court failed to apply the ameliorative provisions of section 41-29-139(b)(1)(A); thus, he argues this matter should be remanded for resentencing under the more lenient provisions of the amended statute. The interpretation of a statute presents a question of law which the appellate court reviews de novo. *Coleman v. State*, 947 So. 2d 878, 880 (¶9) (Miss. 2006).

¶6. On the day Ware committed the crime, section 41-29-139 provided that the maximum sentence for the sale of cocaine in any quantity was thirty years. In July 2014, prior to Ware's trial and sentencing, the effective statute provided sentencing tiers based on the amount of the controlled substance sold. Post-amendment, the statute provides that the maximum sentence for Ware's crime would be eight years. At the pretrial hearing, however, the State argued that the old statutory punishment was applicable, and the trial court agreed.

¶7. Ware alleges that because section 41-29-139 did not contain an element concerning weight of the controlled substance prior to the amendment, it creates an entirely new crime with this new element. Accordingly, Ware argues Mississippi Code Annotated section 99-19-33 (Rev. 2015) applies. The statute provides: "If any statute shall provide a punishment

of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court . . . ." Miss. Code Ann. § 99-19-33.

¶8. The State claims Mississippi Code Annotated section 99-19-1 (Rev. 2015) applies. Generally, this statute provides that the version of the statute in effect at the time the offense is committed will continue to control the defendant's prosecution and his punishment. It reads:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty *shall* affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Miss. Code Ann. § 99-19-1 (emphasis added). In *Walters v. State*, 206 So. 3d 524, 530 (¶17) (Miss. 2016), the Mississippi Supreme Court pronounced that, through the provisions of section 99-19-1, "the Legislature has given strict instruction that the definition of a crime is controlled by the relevant criminal statute in place at the time the crime was committed." In *Walters*, the defendant argued that "he should receive the benefit of a jury instruction listing the elements of grand larceny as they existed at the time of trial," rather than the less advantageous elements existing at the time the crime was committed. *Id*. at 531 (¶17). The supreme court rejected this argument, stating "the plain language of [s]ection 99-19-1 required the trial court to instruct the jury on the elements . . . as they existed at the time the

crime was committed." *Id.* at 530-31 (¶17). This same principle applies to Ware's sentencing.

¶9. As the State points out, *Wilson v. State*, 194 So. 3d 855 (Miss. 2016), addressed the same issue Ware now raises but for a different crime. In *Wilson*, the circuit court sentenced Wilson to ten years for receiving stolen property. The defendant, relying on section 99-19-33, argued that the circuit court should have sentenced him under the newer, more lenient version of the applicable statute. The supreme court pointed to the language in section 99-19-1 that states "no new statutory enactment *shall* defeat the prosecution of a crime committed before the enactment of the new statute . . . unless otherwise specially provided . . . ." *Id.* at 867-68 (¶42). Accordingly, the supreme court concluded that, in cases like *Wilson*, "the sentencing court must follow the version of a statute in existence at the time a crime was committed."[1] *Id.* at 868 (¶43).

¶10. Ware, however, cites to a footnote in *Wilson* that section 99-19-33 applies not just to "situations in which the punishment for the *same* crime has been changed, but in which the Legislature has created a new, second crime that criminalizes the same behavior." *Id.* at 872 n.3. Ware maintains the amendment changed the elements of the crime, not just the penalty, of section 41-29-139, creating a new crime, with a new subsection, and a new sentence. We disagree.

¶11. Here, as in *Wilson*, section 99-19-33 does not apply because there is a change in

---

[1] The *Wilson* opinion overruled several cases which were in conflict with the legislative pronouncement of section 99-19-1, and emphasizes that the supreme court has no power to overrule statutes unless found unconstitutional. *Id.* at 868 (¶43).

punishment for the same crime. We cannot say that the addition of a quantity element to the crime of sale of a controlled substance created a completely new crime, just as the modification of the value of receiving stolen property did not create a new crime in *Wilson*. Accordingly, we find Ware was correctly sentenced under the provisions of the statute in effect at the time he committed the crime in May 2013.

## II.    Jury Instruction

¶12.    Ware claims the trial court erred in denying his cautionary instruction regarding the testimony of the confidential informant. Generally, the decision to give or refuse jury instructions is within the discretion of the trial court. Accordingly, this Court reviews the trial court's refusal of a jury instruction under an abuse-of-discretion standard. *Thomas v. State*, 195 So. 3d 843, 849 (¶15) (Miss. Ct. App. 2016). In determining error regarding the decision to give or refuse jury instructions, the instructions that are given are read as a whole. "If all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id.*

¶13.    Arguments similar to Ware's have been rejected by the Mississippi Supreme Court and this Court. "[B]oth Courts have held that it is not an abuse of discretion to refuse such an instruction where the CI's arrangement with the prosecution is disclosed to the jury, and the CI is subject to cross-examination on the subject." *Id.* at (¶16) (citing *Corrothers v. State*, 148 So. 3d 278, 302-03 (¶55) (Miss. 2014); *Webber v. State*, 108 So. 3d 930, 931 (¶7) (Miss. 2013); *Wallace v. State*, 139 So. 3d 75, 77-78 (¶¶8-9) (Miss. Ct. App. 2016); *Harris v. State*, 144 So. 3d 199, 203 (¶¶16-17) (Miss. Ct. App. 2014)). Here, both circumstances

6

were met. Deputy Roberson and Hunter testified about Hunter's role as a confidential informant in this case and his compensation of $100. Both individuals were subject to cross-examination on this matter. Further, the jury was instructed to use "good common sense and sound honest judgment" in weighing the credibility of each witness.

¶14. The dissent cites *Moore v. State*, 787 So. 2d 1282 (Miss. 2001), and *Pitchford v. State*, 45 So. 3d 216 (Miss. 2010), for the proposition that a cautionary instruction regarding the unreliability of jailhouse informants is required. In *Webber*, however, the supreme court decided that, with regard to confidential informants, the trial court's failure to give a cautionary jury instruction is not an abuse of discretion when the two criteria cited earlier are met: the details of the CI's arrangement with law enforcement is disclosed to the jury, and that the CI is subject to cross examination. *Webber*, 108 So. 3d at 931 (¶7). In 2014, the supreme court in *Corrothers v. State*, 148 So. 3d 278, 302-03 (¶55) (Miss. 2014), specifically declined to apply *Moore*'s cautionary jury instruction requirement in favor of the more recent *Webber* decision; the Court found it unnecessary to give a cautionary informant instruction with respect to jailhouse informants when the two *Webber* criteria were met. This Court has followed *Webber* in the recent cases of *Thomas*, *Wallace*, and *Harris*, and it is proper to do so here. Moreover, any possible unreliability of the confidential informant's testimony was rebutted by the videotaped footage of the drug sale. We conclude the trial court did not abuse its discretion in denying Ware's cautionary instruction regarding the confidential informant.

¶15. Ware's conviction and sentence are affirmed.

7

¶16. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶17. Because the defendant in this case was denied his right to a jury instruction based on longstanding Mississippi precedent that the testimony of a snitch is inherently unreliable, I must respectfully dissent.

¶18. Our Supreme Court has explained "the importance of cautionary instructions when such 'snitch' testimony is offered." *Moore v. State*, 787 So. 2d 1282, 1287 (¶15) (Miss. 2001). In that case, the Supreme Court reversed because a given jury instruction "did not advise the jury to weigh [the snitch's] testimony with 'caution and suspicion.'" *Id.* at (¶16). This is because the Court has seen jailhouse informants or snitches as having an inherent "unreliability." *Id*. And why the Court has also held that "where the informant did receive a benefit, the jury should be instructed to regard such testimony with "'caution and suspicion.'" *Pitchford v. State*, 45 So. 3d 216, 239 (¶89) (Miss. 2010) (quoting *Moore*, 787 So. 2d at 1287 (¶15)).

¶19. Here, Ware sought the following instruction:

> The Court instructs the jury that the testimony of an informant who provides evidence against a defendant for pay, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. You the jury must determine whether the informant's testimony has been affected by interest or prejudice against the defendant.

Despite clear precedent which allows the instruction, the trial court refused to give it. This

8

is a very basic instruction which our Supreme Court has required for the better part of twenty years. Under our standard of review, we should not pretend that the jury instructions fairly announced the applicable rules of law. The instructions simply did not cover this very particular point of law. The majority explains that the snitch's pay was disclosed in testimony; yet this is not the same as a jury instruction. This matter of factual testimony cannot compare with the legal instructions of the Court. "Jury instructions are to advise the jury of applicable law and to instruct the jury to make the factual findings necessary to reach a verdict," whether in a civil or a criminal case. 2 Jeffrey Jackson, et al. *Mississippi Civil Procedure* §20:1 (2018).

¶20.    Nor does a boilerplate instruction to use "good common sense and sound honest judgment" come close to complying with *Moore* or *Pitchford*. This is exactly why the Supreme Court strongly urged us to use a jury instruction informing juries that snitch testimony was to be accorded lesser deference, because it is inherently unreliable. Testimony expressed in trial does not have the same imprimatur of authority as does a jury instruction from the trial court.

¶21.    As the majority sets out, there is precedent which conflicts with *Moore* and *Pitchford*. The better path is to correctly instruct the jury, since so much is at stake. The Supreme Court has made clear that "a defendant is entitled to have jury instructions given which present his theory of the case," save in instances where the instruction "incorrectly states the law," "is covered fairly elsewhere in the instructions," or "is without foundation in the evidence." *Clayton v. State*, 106 So. 3d 802, 804 (¶6) (Miss. 2012). In this case, it is

9

undisputed that the instruction correctly stated the law. The specific point of the inherent unreliability of snitch testimony was not fairly covered elsewhere, and the instruction clearly had foundation in the evidence. The court should have given the instruction.

¶22.  It is easy to give a defendant's requested jury instruction when it correctly instructs the jury and is based upon ample precedent. There was no reason to refuse it here, and there is no reason to strain to approve the refusal when it violates sound precedent and sound policy. Because the jury was not correctly instructed, and a proper jury instruction was wrongfully denied, I respectfully dissent.

**McDONALD, J., JOINS THIS OPINION.**